The defendant's title is certainly bad, for he derives it from one of two administrators, who sold in satisfaction of his own private debt and at private sale. I think, also, that the plaintiff has no title, nor do I think that the defendant is estopped from showing it. The plaintiff claims the negro in question by virtue of an agreement *Page 133 
between her and her coadministrator, Wesley Gordon, which was that she was to pay certain debts of the estate, supposed to be equal in amount to the value of the negro, and take the negro as her own property; and this agreement was made with the consent of such of the distributees as were of age. That a settlement was afterwards made of the (242) estate (but when it does not appear) that the distributees are all now of age, and have never questioned the settlement (neither does it appear when they came of age). In all sales there must be a vendor and vendee. The same person cannot be both vendor and vendee. The purchase, then, was made of Wesley Gordon alone, and one administrator cannot alone, when there are more, make a sale. They are in this respect unlike executors, for all the administrators together represent the intestate, whereas each executor represents the testator. But there is something further in this case. The estate was confided to the plaintiff with the administrator. She was bound to exercise her best judgment in its management, and no act of hers could be valid where her duty and interest were in opposition. In the sale of this negro it was her duty to obtain the best price (at least his value); it was to her interest, if she became the purchaser, that she should obtain him on the lowest possible terms. Nor is it an answer to show that in this particular case the full value was paid. For wise purposes the rule of law is general and makes no exceptions. A trustee cannot purchase at his own sale, that is, of himself. This rule may at times produce individual hardships and inconveniences, but its general operation is beneficial. "Lead us not into temptation" came from the lips of Him to whom error cannot be imputed. To implore it would not disgrace the most honest and pious among us. To make exceptions from the rule in particular cases, upon the ground that full value was paid would produce litigation; and who is there to show the full value? Mere strangers to the worth of the property, and on the opposite side, one whose situation gives him an opportunity of knowing all its defects, and also all its good qualities and where interest would lead him to expose the one and conceal the other. I, therefore, think that the rule should not be departed from; I will not say in any instance, but I must say in (243) those which I at present can call to mind. I am released from saying anything about the ratification by the distributees. To prevent discussion I will confine myself to those who were under age, for it is not as to them shown what they have done or said, or whether they have said or done anything knowingly. It appears only that they have not disturbed the settlement; for how long a time does not appear. What does appear may all well be, and the sale will not be confirmed or made good. Nor is the defendant estopped from showing title paramount the plaintiff's; allowing that he was prevented from doing this during the *Page 134 
mortgage, the estoppel arose from the mortgage and expired with it. I admit that possession alone will support an action, founded even on the title against a mere wrongdoer, until a title paramount is shown to be somewhere; for possession of a chattel is prima facie evidence of title; as in this case, if Mrs. Gordon had shown that she had been in possession of the slave, claiming him as her own, and that the defendant now has him, and he shows not title, Mrs. Gordon would recover, for her possession is primafacie evidence of her right; but when the defendant shows that it was Gordon's in his lifetime, which was prior to Mrs. Gordon's possession, she must then show a title in herself, for her title, supported by prima facie
evidence alone, is destroyed. It is asked, How is this title in the administrators in their representative capacity to be enforced? I answer, by an action in their representative capacity, in which they both must join; at least the names of both are to be used in the commencement, and if one will not go on with the action, such one must be summoned and severed.
I believe all the assertions made in this opinion are to be found in the commonplace books, and therefore I have not cited authorities. As to the authority of one administrator, where there are more than (244) one, I would refer to Mangum v. Sims, 4 N.C. 160.
TAYLOR, C. J., concurred with his brethren.
PER CURIAM. New trial.
Cited: McLeod v. McCall, 48 N.C. 89; Froneberger v. Lewis, 79 N.C. 428;Dickson v. Crawley, 112 N.C. 632; Jordon v. Spiers, 113 N.C. 346.